**TAMIAMI PARTNERS, LTD., Plaintiff,**

**v.**

**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Defendant.**

**No. 92–0489–CIV.**

United States District Court,
S.D. Florida.

March 5, 1992.

Sanford L. Bohrer, Bohrer & Aprill, P.A., Miami, Fla., for plaintiff.

Eric C. Christu, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, West Palm Beach, Fla., S. Bobo Dean, Hobbs, Straus, Dean & Wilder, Washington, D.C., for defendant.

## OMNIBUS ORDER

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Tamiami Partners Ltd.'s ("Tamiami Partners") Motion for Preliminary Injunction to compel arbitration, pursuant to the terms of a management agreement between Tamiami Partners and the Miccosukee Tribe of Indians of Florida ("Tribe") for the operation of the Tribe's gaming establishment; and to stay the Tribe from impeding Tamiami Partners' operation of the gaming facilities. The Court held a hearing on Friday, February 28, 1992, which was recessed until the following Monday, March 2, 1992. Pending resumption of the hearing, the Court issued a Temporary Restraining Order maintaining the status quo.[1] At the conclusion of the second hearing, the Court continued the Temporary Restraining Order until rendition of this order.[2]

Prior to resumption of the hearing on March 2, 1992, the Tribe filed a memorandum of law in opposition to the motion for preliminary injunction, and moved to dismiss the complaint. Tamiami Partners opposed the motion to dismiss, and also

---

**1.** Transcript of Proceedings on February 28, 1992, at 31–32. *See* Temporary Restraining Order, dated February 28, 1992.

**2.** Transcript of Proceedings on March 2, 1992, at 64.

moved to strike all factual assertions proffered by the Tribe in its memoranda.

For the reasons more fully stated below, it is hereby

ORDERED AND ADJUDGED that

(1) The Temporary Restraining Order, dated February 28, 1992 is VACATED;

(2) Tamiami Partners' Motion for Preliminary Injunction is DENIED;

(3) The Tribe's Motion to Dismiss is DENIED;

(4) Tamiami Partners' Motion to Strike is DENIED as moot; and

(5) This action is STAYED. The stay will be automatically lifted upon the occurrence of any one of the following events:

    i. Exhaustion of tribal remedies, as more fully explained below.

    ii. Self-help on the part of the Tribe to evict or otherwise impede Tamiami Partners from operating the gaming enterprise.

    iii. Failure on the part of the Tribe to provide Tamiami Partners with two (2) business days' notice, prior to taking any action pursuant to a Tribal Court order.

## FACTUAL BACKGROUND

Defendant Miccosukee Tribe of Indians of Florida ("Tribe") is a federally recognized tribe of Indians. (Verified Complaint, at ¶ 3.) As such, the Tribe may establish gaming activities on its lands, pursuant to Chapter 29, Title 25, of the United States Code, "Indian Gaming Regulation." 25 U.S.C.A. §§ 2701–21 (West Supp. Pamphlet 1991). The gaming regulation statutes, moreover, permit tribes to enter into management contracts for the operation of "class II gaming" activities. 25 U.S.C.A. § 2711 (West Supp. Pamphlet 1991). These class II gaming activities include bingo, and similar games, such as "pull-tabs, lotto, punch boards, tip jars, and instant bingo." 25 U.S.C.A. § 2703(7) (West Supp. Pamphlet 1991).

In accordance with such federal authorization, the Tribe entered into a Management and Economic Development Agreement ("Agreement") with Tamiami Partners on April 7, 1989. (Verified Complaint, Exhibit 1). Pursuant to the terms of the Agreement, Tamiami Partners currently operates a bingo hall ("the Enterprise") inside the Tribe's reservation. (Verified Complaint, at ¶ 7).

On January 28, 1992, the Tribe notified Tamiami Partners by letter that, "effective 30 days from the date hereof," the Agreement was terminated. (Verified Complaint, Exhibit 2, at 1.) Tamiami Partners responded to the Tribe's letter on February 4, 1992, disputing all of the Tribe's grounds for termination, and concluding that Tamiami Partners considered the "purported termination a nullity." (Verified Complaint, Exhibit 3, at 5.) The Tribe acknowledged receipt of this response on February 11, 1992, but reasserted its position that "the Notice of Termination is operative and this Agreement will terminate on February 28, 1992." (Verified Complaint, Exhibit 4, at 1.) On February 25, 1992, Tamiami Partners made a formal demand for arbitration to determine the validity of the Tribe's termination notice, pursuant to the Agreement's arbitration clause. (Verified Complaint, Exhibit 5, at 1.) Article 12 of the Agreement, entitled "Disputes—Arbitration," provides, in pertinent part: "All disputes, controversies and/or claims arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration, as set forth in this Article 12." (Verified Complaint, Exhibit 1, at 30.) Tamiami Partners also requested that the Tribe respond to its arbitration demand by noon, February 26, 1992 and indicated that, absent such response, it would assume the Tribe's reply to be negative. (Verified Complaint, Exhibit 5, at 2.) The Tribe did not respond, filing instead a "Statement of Claim" in the Miccosukee Tribal Court. (Verified Complaint, Exhibit 6.)[3] Tamiami

---

**3.** The tribal court claim is an action for declaratory and injunctive relief. (Verified Complaint, Exhibit 6, at 1.) It prays for an order declaring that the Agreement is terminated; directing that

the Tribe assume control of the Enterprise; enjoining Tamiami Partners from interfering with such assumption; directing tribal police to en-

Partners, in turn, filed the above-styled case on February 27, 1992.[4]

## FEDERAL QUESTION JURISDICTION

Tamiami Partners invokes this Court's federal question jurisdiction, pursuant to 28 U.S.C.A. § 1331 (West 1966 & Supp. 1991).[5] As more fully discussed below, this case requires that the Court construe an agreement between Indians and non-Indians that includes a limited waiver of sovereign immunity by the Tribe; and that, on its face, provides for arbitration of all disputes arising from the agreement. The Court must interpret these contractual provisions to determine whether it should compel arbitration, thereby enjoining prosecution of a claim filed by the Tribe in tribal court. The case therefore, presents a federal common law question—the exercise of Tribal Court judicial power over non-Indians. *National Farmers Union Ins. Co. v. Crow Tribe of Indians,* 471 U.S. 845, 852, 105 S.Ct. 2447, 2451, 85 L.Ed.2d 818 (1985) ("The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331.")

## THE TRIBE'S SOVEREIGN IMMUNITY

Having established that it has subject matter jurisdiction, the Court must next address the threshold issue of the Tribe's sovereign immunity. "Indian tribes are 'domestic dependent nations,' which exercise inherent sovereign authority over their members and territories." *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* —— U.S. ——, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (citing *Cherokee Nation v. Georgia,* 30 U.S. (5 Pet.) 1, 8 L.Ed. 25 (1831)). "Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional

abrogation." *Oklahoma Tax Comm'n,* 111 S.Ct. at 909 (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978)). *See also Maryland Casualty Co. v. Citizens Nat'l Bank,* 361 F.2d 517 (5th Cir.), *cert. denied,* 385 U.S. 918, 87 S.Ct. 227, 17 L.Ed.2d 143 (1966) ("Indian nations, as an attribute of their quasi-sovereignty, are immune from suit, either in the federal or state courts, without Congressional authorization.") (citations omitted).

■ In Article 23 of the Agreement, the Tribe, denominated "Owner" in the Agreement, waives its sovereign immunity from suit, subject to the following limitations:

> The United States District Court for the Southern District of Florida, shall have jurisdiction over the parties hereto in order to enforce the terms hereof specifically, upon one or both of the following events (i) Owner fails to participate in an arbitration proceeding invoked as provided in Article 12 [the arbitration clause], or (ii) failure by Owner to abide by the terms of an arbitration award.... This waiver of sovereign immunity shall not become effective until Manager [Tamiami Partners] has given notice to the Miccosukee Tribal Business Council, detailing the nature of the complaint and the Owner shall have failed after 30 days following such notice to cure such complaint.

(Verified Complaint, Exhibit 1, at 43.) This waiver clause is clear and unambiguous. Pursuant to *Oklahoma Tax Comm'n,* therefore, the clause effectively waives the Tribe's sovereign immunity, subject to the stated conditions. The first condition that applies to this case is met by the Tribe's failure to participate in an arbitration proceeding invoked by Tamiami Partners in their letter dated February 25,

---

force the order; and granting attorneys' fees and costs. *Id.* at 16.

**4.** Tamiami Partners' Verified Complaint prays for the entry of a declaratory judgment, holding that the Tribe is bound by the Agreement's arbitration clause; and for an injunction compelling arbitration and enjoining the Tribe from taking

any action to seize or assume control of the Enterprise pending arbitration. (Verified Complaint, at 8–9.)

**5.** Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.*

1992.[6] By filing a claim in Tribal Court only one day after this arbitration demand, the Tribe effectively rejected the orderly arbitration proceedings contemplated by the Agreement.[7]

The second condition precedent to the waiver of sovereign immunity is the thirty-day cure notice provision, which Tamiami Partners concedes it has not fulfilled.[8] Conditions precedent require substantial performance. *Goodwin v. Jacksonville Gas Corp.*, 302 F.2d 355 (5th Cir.1962). Because the Tribe had already issued its own thirty day termination notice, which Tamiami Partners alleges constitutes a breach of the Agreement, however, Tamiami Partners' compliance with the thirty-day cure notice provision, asking the Tribe not to terminate the agreement, would have served no purpose. *Solitron Devices v. Honeywell, Inc.*, 842 F.2d 274 (11th Cir. 1988) (Where a contract has already been terminated by the party allegedly in breach, the suing party's compliance or lack of compliance with a termination clause is irrelevant.).

Therefore the Court finds that the Tribe's actions—issuing a thirty-day termination notice and bypassing the arbitration process for recourse to Tribal Court—resulted in a waiver of strict compliance with the thirty-day cure notice provision. The Tribe, therefore, has effectively waived its sovereign immunity and is subject to the jurisdiction of this Court, pursuant to Article 23 of the Agreement.

## EXHAUSTION OF TRIBAL REMEDIES

■ Despite the operation of Article 23 of the Agreement, waiving the Tribe's sovereign immunity, the Court must next consider the propriety of abstaining from exercising its jurisdiction, in light of the doctrine of exhaustion of tribal remedies. The United States Supreme Court has developed this doctrine to further the longstanding federal policy of encouraging tribal self-government, in which tribal courts play a vital role. *Iowa Mut. Ins. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987). *See also National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454 ("Exhaustion of tribal court remedies, moreover, will encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction, and will also provide other courts with the benefit of their expertise in such matters in the event of further judicial review.")

By abstaining from exercising its jurisdiction at this juncture and permitting the Miccosukee Tribal Court to determine its own jurisdiction over this dispute, which arises over non-Indian gaming activities on the Tribe's reservation, the Court would be furthering these federal policies. *Iowa Mut.*, 480 U.S. at 18, 107 S.Ct. at 977 ("Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal court unless affirmatively limited by a specific treaty provision or federal statute.") (citations omitted). Moreover, abstention would also further the Congressional policy of the federal statute that permits the Agreement underlying this action. 25 U.S.C.A. § 2702(3) (West Supp. Pamphlet 1991).[9]

---

6. At the hearing held in this matter, counsel for the Tribe stated its position that the language of the arbitration clause does not encompass termination. (Transcript of Proceedings on Monday, March 2, 1992, at 5). The Court finds, however, that the plain language of the arbitration clause, which includes disputes over breach of the Agreement, does encompass an allegedly wrongful termination.

7. Nothing transpired in the hearings that would indicate to this Court the Tribe's willingness to voluntarily engage in the arbitration process contemplated by the Agreement.

8. Transcript of Proceedings on Friday, February 28, 1992, at 12. The Tribe's position, as stated by counsel on the second day of the hearing, is that they regard the service of the Verified Complaint in this action to constitute cure notice required by Article 23 of the Agreement. (Transcript of Proceedings on Monday March 2, 1992, at 8).

9. Section 2702, the Congressional declaration of policy for Chapter 29, states that the purpose of the chapter is, *inter alia,* "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." *Id.*

STAY OF FEDERAL ACTION

 In light of these federal objectives, therefore, the Court chooses to abstain from exercising its jurisdiction, pending exhaustion of tribal remedies. The Court emphasizes, however, that application of the exhaustion doctrine does not deprive it of subject-matter jurisdiction. *Iowa Mut.*, 480 U.S. at 16 n. 8, 107 S.Ct. at 976 n. 8 ("Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite.") (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

Rather than dismiss the federal action, therefore, the Court chooses to stay it. *National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454 ("Whether the federal action should be dismissed, or merely held in abeyance pending the development of further Tribal Court proceedings, is a question that should be addressed in the first instance by the District Court."). Moreover, a stay of the federal action is preferable to a dismissal, in order to keep the federal forum readily available if warranted by "a significant change of circumstances." *Northern Cheyenne Tribe v. Adsit*, 721 F.2d 1187, 1188 (9th Cir.1983) (citing *Kaiser Steel Corp. v. W.S. Ranch Co.*, 391 U.S. 593, 594, 88 S.Ct. 1753, 1754, 20 L.Ed.2d 835 (1968)). Against the contingency that such a change in circumstances may arise, therefore, the stay will be automatically lifted upon exhaustion of tribal remedies, upon the use of self-help by the Tribe, or upon the provision of less than two business days' notice to Tamiami Partners of impending action pursuant to a Tribal Court order.

CONCLUSION

This Court finds that it has jurisdiction over the subject matter and the parties in this case. In deference to the federal common law doctrine of exhaustion of tribal remedies, however, the Court chooses to stay this action, subject to the terms outlined above.

DONE AND ORDERED.