**TOM'S AMUSEMENT COMPANY, INC., Plaintiff,**

**v.**

**Kenneth W. CUTHBERTSON, individually and d/b/a Tepee Amusements, Defendants.**

**Civ. No. 2:92CV236.**

United States District Court, W.D. North Carolina, Bryson City Division.

Feb. 5, 1993.

Jeffrey R. McFadden and Mark N. Poovey, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, and R. Leslie Waycast-

**404**

er, Jr., Waycaster, Corn & Morris, Dalton, GA, for plaintiff.

W. Scott Jones, Long, Parker, Hunt, Payne & Warren, P.A., Asheville, NC, for defendants.

## ORDER

RICHARD L. VOORHEES, Chief Judge.

**THIS MATTER** is before the Court on the motion of Plaintiff for a hearing in claim and delivery pursuant to Fed.R.Civ.P. 64 and N.C.Gen.Stat. § 1–474.1, filed December 14, 1992. On December 23, 1992, this Court ordered notice of a hearing in claim and delivery to be served on Defendant. A hearing was held by the undersigned on January 19, 1993. At that time, Defendant filed a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, along with the supporting affidavit of Denning Rochester, Director of Gaming for the Defendant, on January 19, 1993. Plaintiff's brief in opposition to the motion to dismiss was filed on January 25, 1993. On January 28, 1993, Defendant filed a supplemental brief in letter form. On February 1, 1993, Plaintiff filed a letter response. For the reasons stated below, the Court finds it has subject matter jurisdiction, will not dismiss the action, but will stay further proceedings pending exhaustion of tribal court remedies.

## I. PROCEDURAL BACKGROUND

The Plaintiff is a Georgia corporation in the business of leasing electronic gaming machines. Defendant is a resident of the State of North Carolina and the sole owner of a gaming establishment located on the Cherokee Indian Reservation in Cherokee, North Carolina. Both the Plaintiff and Defendant are non-Indians.

In August, 1989, the Eastern Band of Cherokee Indians ("Tribe"), entered into a "Daily Cherokee Bingo Management Agreement" with Defendant Cuthbertson. Exhibit A *attached to* Complaint. This management agreement was approved by the Bureau of Indian Affairs pursuant to 25 U.S.C. § 81. *Id.* at 9. Cuthbertson leased premises located on the Reservation and was granted a license to operate bingo and related games by the Tribe. *Id.* at 2. He was obligated to provide the machines necessary for the establishment as well as a general manager and employees. *Id.* at 3–6.

In April, 1991, Cuthbertson entered into a contract with Plaintiff entitled, "Gaming Agreement." Exhibit B *attached to* Complaint. Pursuant to the terms of this agreement, Plaintiff was to buy electronic gaming equipment and install it at Cuthbertson's place of business "in accordance with the Tribe's Gaming Ordinance under the provisions set forth in the Indian Gaming Regulatory Act." *Id.* at 1. The agreement further specified that Plaintiff [nominated "Operator" in the agreement] would be allowed "to operate the equipment under his [Cuthbertson's] gaming license in accordance with the laws governing his license." *Id.* Information in brackets provided. Cuthbertson was solely responsible for payments to the Tribe and contracted "to indemnify and hold harmless the Operator from any responsibility regarding any payment to (sic) made to the tribe." *Id.* at 3.

In June, 1991, the parties executed an amended agreement which incorporated the previous agreement but provided for the purchase of additional machines by Plaintiff for installation at the establishment. **Exhibit D** *attached to* **Complaint.**

The total value of the machines purchased by Plaintiff and installed at Defendant's gaming establishment is approximately $250,-000.00. **Exhibits C and E** *attached to* **Complaint.**

Plaintiff alleges Cuthbertson thereafter defaulted in his payments to Plaintiff under the terms of the contract. As a result, the electronic gaming machines are still located on the Reservation at Cuthbertson's place of business. Defendant admits that Plaintiff is the owner of the machines. Whether these machines remain in use during the pendency of this lawsuit has not been disclosed to the Court. While Cuthbertson does not object to the removal of the machines by Plaintiff, Plaintiff allegedly has been told by members of the Cherokee Police Department not to take the machines without legal process. **Af-**

fidavit of Denning Rochester, Director of Gaming for Tepee Amusements, filed January 19, 1993. Meanwhile, Cuthbertson claims the payments made to Plaintiff under the contract are illegal and therefore void *ab initio*.

## II. SUBJECT MATTER JURISDICTION

Defendant argues the Court lacks diversity jurisdiction since the Tribe is the real party in interest, citing the Supreme Court's opinion in *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), as interpreted in *Superior Oil Co. v. Merritt,* 619 F.Supp. 526 (D.Utah 1985). Plaintiff argues that because the dispute is between two non-Indians and involves personal property, the exercise of federal jurisdiction does not impose on tribal sovereignty, citing *Kuykendall v. Tim's Buick, Pontiac, GMC & Toyota, Inc.,* 149 Ariz. 465, 719 P.2d 1081 (1985).

 The case at hand involves a contract dispute between two non-Indians operating a gaming establishment on the Eastern Band of Cherokee Indian Reservation pursuant to a gaming license and ordinances established by the Tribe. The Defendant contracted with Plaintiff as a disclosed agent of the Tribe. Indeed, the contract itself recites that the Plaintiff will do business "under" the gaming license granted to Cuthbertson by the Tribe. This scenario has a direct impact on Indians or their property. **Felix S. Cohen,** *Handbook of Federal Indian Law* **343** (1982). Therefore, the fact that the contractual parties are non-Indians is not dispositive of the jurisdictional issue.

In addition, the fact that the dispute at hand involves non-Indians does not prohibit the tribal court from exercising civil jurisdiction over this matter. *Stock West Corp. v. Taylor,* 964 F.2d 912 (9th Cir.1992) **(holding that the federal district court has subject matter jurisdiction over a legal malpractice suit by a non-Indian construction company against the tribal attorney, also a non-Indian, for actions taken in connection with the proposed construction of a sawmill on the reservation; but, the court would abstain from exercising its jurisdiction pending the exhaustion of civil reme-** dies in the tribal court) [*"Stock West II"*]. Indian tribes have

"inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.... A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

*Id.* at 918–919 (quoting *Montana v. United States,* 450 U.S. 544, 565–566, 101 S.Ct. 1245, 1258, 67 L.Ed.2d 493 (1981). The operation of a gaming establishment obviously has a direct economic impact on the Tribe. The establishment at issue is operated on the Reservation on land leased to Cuthbertson. Thus, the case at hand presents an even stronger connection than those cases cited above.

In this regard, the Court takes note of the rules of civil procedure established by the Tribe for the Court of Indian Offenses. Those rules provided in pertinent part:

(d) The Cherokee Court of Indian Offenses ... shall exercise jurisdiction over disputes involving any contract that is negotiated, signed or executed on Indian trust land.

(e) The Cherokee Court of Indian Offenses ... shall exercise jurisdiction over all persons, firms, corporations, partnerships or other legal business entities which conduct business on Cherokee trust lands. Such jurisdiction shall be limited to transactions *involving or affecting* individual Indians, Indian owned businesses, *tribal laws and policy or Indian property.*

§ 1–2(d)(e), Rules of Court for the Cherokee Court of Indian Offenses, *attached to* Defendant's Letter Brief, filed January 29, 1993. As discussed below, it has been made clear by statute and case law that gambling

enterprises affect tribal laws, policy and property.

Moreover, Defendant claims the contractual payments to be made to Plaintiff are illegal, calling into question the compliance of the parties with the Tribe's ordinances for gaming establishments. This, of course, is a matter peculiarly within the realm of the Tribe and which would have direct effect thereon. These factual discrepancies sufficiently distinguish the case at hand from the simple action to recover property brought in *Kuykendall* and cited by the Plaintiff.

■ The Court finds that although the contract is between Plaintiff and Cuthbertson, Plaintiff does enjoy a consensual contractual relationship with the Tribe by virtue of the use of the gaming license granted to Cuthbertson by the Tribe. *FMC v. Shoshone–Bannock Tribes*, 905 F.2d 1311 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991). The relationship between Plaintiff and the Tribe is substantial. *Id.* The Plaintiff has actively engaged in commerce with the Tribe through Cuthbertson and thus has subjected itself to the civil jurisdiction of the tribal court. *Id.; see also, Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693, *superceded by statute on other grounds sub nom., Mousseaux v. United States Comr. Indian Affairs*, 806 F.Supp. 1433 (D.C.S.C.1992). The Court cannot find that the Tribe is a "stranger" to the contract between Plaintiff and Defendant. *White Mountain Apache Tribe v. Smith Plumbing Co.*, 856 F.2d 1301, 1306 (9th Cir.1988).

> Where the civil action involves non-Indian parties, concerns incidents which occurred off of the reservation, and will not impact the tribe's authority, there is little reason to require that the tribal court have first crack at the case.

*Stock West Corp. v. Taylor,* 942 F.2d 655, 660 (9th Cir.1991) ["*Stock West I* "].[1] That is not the case at hand.

■ Therefore, the Court finds there is clearly diversity jurisdiction and further

finds there is federal question jurisdiction as well. 28 U.S.C. § 1331. The issues before the Court involve a contractual arrangement for the operation of a gaming establishment on the Reservation. This establishment is governed by the provisions of 25 U.S.C. § 81 and the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.* The interpretation of contractual provisions involving gaming establishments on the Reservation involves federal question issues pursuant to 28 U.S.C. § 1331. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 788 F.Supp. 566 (S.D.Fla.1992); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990). *See also United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc.*, 883 F.2d 886 (10th Cir.1988); *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir.1986); *United States v. Sisseton–Wahpeton Sioux Tribe*, 897 F.2d 358 (8th Cir.1990); and *United Keetoowah Band of Cherokee Indians v. Oklahoma*, 927 F.2d 1170 (10th Cir.1991) (where federal jurisdiction was unquestioned in cases involved gaming establishments pursuant to 25 U.S.C. §§ 81, 2701, *et. seq.*).

## III. ABSTENTION

■ Nonetheless, the Court will abstain at this time from an exercise of its jurisdiction. The Supreme Court has developed the doctrine of abstention of federal jurisdiction pending exhaustion of tribal remedies "to further the longstanding federal policy of encouraging tribal self-government, in which tribal courts play a vital role." *Tamiami Partners,* 788 F.Supp. at 569 (citing *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14, 107 S.Ct. 971, 975, 94 L.Ed.2d 10 (1987)).

> "Tribal authority over the activities of non-Indians on reservation lands is an important part of tribal sovereignty. Civil jurisdiction over such activities presumptively lies in the tribal court unless affirmatively limited by a specific treaty provision or federal statute." Moreover, abstention would also further the Congressional poli-

---

1. This case is superceded by *Stock West Corp.,* 964 F.2d 912, previously cited in this Order.

This case is cited here for other reasons.

cy of the federal statute that permits the Agreement underlying this action.

*Tamiami Partners,* 788 F.Supp. at 569 (quoting *Iowa Mut.,* 480 U.S. at 18, 107 S.Ct. at 977) (citing 25 U.S.C.A. § 2702(3) (West Supp. Pamphlet 1991)).

As the Supreme Court stated in *Iowa Mut.:*

> Regardless of the basis for jurisdiction, the federal policy supporting tribal self-government directs a federal court to stay its hand in order to give the tribal court a "full opportunity to determine its own jurisdiction." ... [U]nconditional access to the federal forum would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs.

*Iowa Mut.,* 480 U.S. at 16, 107 S.Ct. at 976 (citations omitted).

The Court notes it is unaware of any pending action involving these parties before the tribal court. Nonetheless, the Court finds its review of cases involving concurrent jurisdiction over civil matters arising from business relations on Indian land dictates abstention pending a determination by the tribal court on the issue of whether it has jurisdiction over this civil proceeding. *Stock West Corp.,* 964 F.2d at 920; *Tamiami,* 788 F.Supp. at 569–570. Plaintiff is thus admonished to seek relief therein.

The Court notes its displeasure at the Plaintiff's unwanted procedural posture. All parties admit the Plaintiff owns the machines located on the Reservation. Defendant does not object to their removal. The machines are valuable items of personal property "held hostage" in the procedural dilemma of the two courts involved. It is also possible that the Defendant may in fact be benefitting from the use of such machines during the pendency of this action. However, the Supreme Court has clearly stated its intention that this Court defer to the exercise of tribal court jurisdiction, if indeed the tribal court chooses to do so. The posture of Plaintiff in this case is a risk undertaken by businesses engaging in contractual relations directly or indirectly involving the Tribe.

To that end, the Court will stay the present federal court action, lifting the provisions of this Court's Order of December 23, 1992, which enjoined the Defendant from disposing of the assets in question. *Tamiami Partners,* 788 F.Supp. at 570. However, the stay of this action will be automatically lifted upon the first occurrence of any one of the following events: 1) exhaustion of tribal court remedies, including any administrative remedies to which these contractual relations may be subject; 2) a finding by the tribal court that it either does not have civil jurisdiction or that it declines to exercise such jurisdiction; 3) self-help on the part of Defendant or the Tribe to dispose of or otherwise interfere with the admitted ownership interest of Plaintiff in the machines located at Defendant's place of business; or 4) failure of the tribal court to notify Plaintiff by three (3) business days' notice of any action to be taken pursuant to tribal court order. *Id.* at 567.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion to dismiss for lack of subject matter jurisdiction is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that federal subject matter jurisdiction and federal question jurisdiction over the pending action exist, but this Court finds it should abstain from the exercise of such jurisdiction, at this time; and

**IT IS FURTHER ORDERED** that the above-entitled action is hereby **STAYED** and the provisions of this Court's Order of December 23, 1992, enjoining Defendant from certain actions as specified therein are hereby **VACATED;** and

**IT IS FURTHER ORDERED** that the stay of this action is subject to automatic lifting upon the first occurrence of any of the following events:

1. exhaustion of tribal court remedies and/or administrative remedies and procedures;

2. a finding by the tribal court that it does not have civil jurisdiction or that it declines to exercise its jurisdiction;

3. self-help on the part of the Defendant or the Tribe to dispose of or otherwise interfere with the admitted ownership interest of the Plaintiff in the machines listed in the affidavit attached to this Court's Order of December 23, 1992; or

4. failure of the tribal court to notify Plaintiff by three (3) business days' notice of any action to be taken pursuant to tribal court order.