See also 803 F.Supp. 401.

**TAMIAMI PARTNERS, LIMITED,**
**Plaintiff–Appellant,**

v.

**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Defendant–Appellee.**

**TAMIAMI PARTNERS, LIMITED,**
**Plaintiff–Appellee,**

v.

**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Defendant–Appellant,**

**Kenneth Welt, Conservator,**
**Movant–Appellant.**

**TAMIAMI PARTNERS, LIMITED,**
**Plaintiff–Appellee,**

v.

**MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Defendant–Appellant.**

Nos. 92–4869, 93–4375 and 93–4410.

United States Court of Appeals,
Eleventh Circuit.

Aug. 16, 1993.

Sanford L. Bohrer, Bohrer & Aprill, Miami, FL, for Tamiami Partners, Ltd.

Dexter W. Lehtinen and Steven W. Simon, Spencer & Klein, P.A., Miami, FL, for Miccosukee Tribe of Indians.

Arthur Halsey Rice, Miami, FL, for Kenneth Welt.

Myles E. Fling, Acting Asst. Atty. Gen., Appellate Section, Environment & Natural Resources Div., Dept. of Justice, Washington, DC, for amicus U.S.

Before HATCHETT, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

HATCHETT, Circuit Judge:

In this lawsuit involving a contract dispute between Indians and non-Indians on Indian lands, we hold that the district court did not have subject matter jurisdiction.

## I. FACTS

The Miccosukee Tribe of Indians of Florida (Tribe), a federally recognized Indian tribe, was organized under the Indian Reorganization Act of 1934, 25 U.S.C. § 461, *et seq.* In 1988, Congress enacted the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. § 2701, *et seq.*, to define the powers of Indian tribes in conducting and regulating gaming on Indian land. In May, 1989, Tamiami Partners, Ltd. (TPL), a Florida limited partnership involved in gaming activities, was organized and Tamiami Development Corporation (TDC) was its sole general partner.

On April 7, 1989, the Tribe and TDC entered into a Management and Economic Development Agreement (agreement) for the purpose of operating a Class II gaming enterprise pursuant to the IGRA.[1] The Tribe owned the land, and TDC managed the gaming enterprise. In February, 1990, after TDC assigned its rights under the agreement to TPL, TPL spent approximately $6.5 million to acquire land that became part of the Miccosukee Indian Reservation, built the bingo hall, and began business in September, 1990.

In 1991, the Tribe and TPL began having disputes over the gaming operation. Due to these disputes, on January 28, 1992, the Tribe sent TPL a notice of its intent to terminate the agreement on February 28, 1992. On February 4, 1992, in a response, TPL disputed the Tribe's grounds for termination. On February 11, 1992, the Tribe acknowledged receipt of TPL's response, but reasserted the termination of the agreement effective February 28, 1992. On February 25, 1992, TPL formally demanded arbitration to determine the validity of the Tribe's termination notice, pursuant to article 12 of the parties' agreement.[2] Additionally, TPL requested that the Tribe respond to its arbitration demand by noon, February 26, 1992, and indicated that, without a response, it would assume the Tribe's reply to be negative. The Tribe did not respond, but filed a "Statement of Claim" in Miccosukee Tribal Court.[3] On February 27, 1992, TPL filed a verified complaint in the United States District

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. Class II gaming includes bingo and card games. 25 U.S.C. § 2703(7). Class II gaming on reservations is within the jurisdiction of the Indian Tribes, subject to the provisions of the IGRA. 25 U.S.C. § 2710(a)(2).

2. Article 12.1 of the agreement provided: "All disputes, controversies and/or claims arising out of or relating to this agreement, or breach thereof, shall be settled by arbitration, as set forth in this article 12."

3. The Tribe's "Statement of Claim" is an action for declaratory and injunctive relief, praying for an order declaring that the agreement is terminated, directing that the tribe assume control of the enterprise, enjoining TPL from interfering with such assumption, directing tribal police to enforce the order, and granting attorney's fees and costs.

Court, Southern District of Florida.[4]

## II. PROCEDURAL HISTORY

On February 28, 1992, the district court held a hearing on TPL's motion for a preliminary injunction to compel arbitration. Because the district court recessed the hearing until March 2, 1992, it issued a temporary restraining order maintaining the status quo of the parties. On March 5, 1992, the district court entered its first omnibus order, finding that it had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 to determine the extent of tribal court jurisdiction over non-Indians.[5] The district court acknowledged the Tribe's sovereign immunity, but determined that the Tribe had waived its sovereign immunity in article 23 of the agreement.[6] Thus, the district court vacated its previously entered temporary restraining order, denied TPL's motion for a preliminary injunction, and denied the Tribe's motion to dismiss. The district court also stayed any further proceedings until (1) tribal remedies were exhausted, (2) the Tribe used self-help, or (3) the Tribe failed to give at least two business days' notice of taking action pursuant to the tribal court order. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 788 F.Supp. 566 (S.D.Fla.1992) (*TPL I*).

On July 16, 1992, the Miccosukee Tribal Court entered an order directing the parties to arbitrate the commercial disputes and reserved jurisdiction to hear matters not covered under the arbitration clause. *Miccosukee Tribe of Indians v. Tamiami Partners, Ltd.*, No. CV 92–07 (Miccosukee Tribal Court, July 16, 1992). During this period, the Tribe denied approximately seventeen gaming license applications and approved sixteen license applications pursuant to a Tribe ordinance regarding licensing gaming personnel. TPL considered the Tribe's licensing denials to be a form of self-help. Thus, on July 21, 1992, TPL filed in the district court an emergency motion seeking injunctive relief to prohibit the Miccosukee Tribal Gaming Agency (Agency) from further denying licenses of key employees and to compel the Tribe to arbitrate licensing issues.[7]

After a hearing on July 24, 1992, the district court issued a temporary injunction pending its review of the Tribe's licensing process. On August 4 and 5, 1992, the district court held evidentiary hearings to review the licensing process. On August 19, 1992, the district court entered its second omnibus order, determining that the Tribe's licensing process was "arbitrary and capricious" under the Administrative Procedure Act (APA), but also finding that the Tribe did not waive its sovereign immunity over the licensing process. Accordingly, the district court vacated its temporary injunction, denied TPL's emergency motion for a preliminary injunction, denied the Tribe's motion to dismiss, and stayed the action subject to the terms of the first omnibus order. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, 803 F.Supp. 401 (S.D.Fla.1992) (*TPL II*). On August 21, 1992, TPL filed a motion for leave to file a supplemental complaint and an emergency motion for a preliminary injunction. On September 15, 1992, the district court denied both motions. TPL appealed.

4. TPL's verified complaint prayed for the entry of a declaratory judgment and injunction, holding the Tribe bound under the agreement's arbitration clause, compelling arbitration, and enjoining the tribe from taking any action to seize or assume control of the enterprise pending arbitration.

5. Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

6. Article 23 of the agreement states:

The United States District Court for the Southern District of Florida, shall have jurisdiction over the parties hereto in order to enforce the terms hereof specifically, upon one or both of the following events: (i) Owner [Tribe] fails to participate in an arbitration proceeding invoked as provided in Article 12 [the arbitration clause], or (ii) failure by Owner to abide by the terms of an arbitration award.... This waiver of sovereign immunity shall not become effective until manager [TPL] has given notice to the Miccosukee Tribal Business Council, detailing the nature of the complaint and the Owner shall have failed after thirty days following such notice to cure such complaint.

7. Miccosukee Tribal Gaming Agency is the Business Council of the Miccosukee Tribe of Indians of Florida.

On April 13, 1993, the Agency denied applications for gaming licenses of TPL, TDC, and Cye Mandel and John Sisto.[8] The Agency also appointed Kenneth Welt as conservator of Miccosukee Indian bingo. Welt removed TPL, TDC, Mandel, and Sisto from the premises on April 13, 1993, and the tribal court issued an order enforcing Welt's appointment. Thereafter, TPL filed a motion for an emergency hearing and an order enjoining the Tribe from exercising self-help. After a hearing on April 15, 1993, the district court issued its third omnibus order, lifting the stay because the Tribe violated the two-day notice provision in appointing Welt without giving notice, finding that the tribal court exceeded its jurisdiction because it affirmed Welt's appointment, and declaring void the denial of the four license applications. The district court also declared void the appointment of Welt as conservator, denied Welt's motion to intervene, and granted TPL injunctive relief. *Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians*, No.92–0489–CIV–HIGHSMITH, slip op. at 6 (S.D.Fla. Apr. 15, 1993) (*TPL III*).

The Tribe filed an emergency motion for stay pending appeal in this court. This court granted the Tribe's motion for leave to appeal pursuant to 28 U.S.C. § 1292 and consolidated and expedited the appeals.[9]

### III. CONTENTIONS

The Tribe, appellant, contends that the district court lacked subject matter jurisdiction to consider the commercial contract dispute between the Tribe and non-Indians on Indian lands. The Tribe contends that the Miccosukee Tribal Court had jurisdiction over this dispute and that tribal courts have exclusive jurisdiction over actions of non-Indians on reservation lands absent an affirmative limitation from federal treaties and statutes. Moreover, the Tribe contends that it did not waive its sovereign immunity nor relinquish its powers relating to the Tribe's right to regulate gaming.

Welt, appellant, contends that the Tribe's sovereign immunity bars this lawsuit. Welt

also contends that although the district court has federal jurisdiction, pursuant to 28 U.S.C. § 1331, to review a tribal court's exercise of its jurisdiction, the exhaustion doctrine bars the district court from the exercise of its jurisdiction until TPL has exhausted all tribal remedies.

The United States, participating as *amicus curiae* on behalf of the appellants, contends that the district court did not have subject matter jurisdiction because contract interpretation does not arise under federal law. Additionally, the United States contends that parties cannot create federal jurisdiction through agreement.

The National Indian Gaming Association, participating as *amicus curiae* on behalf of the appellants, contends that the contract dispute between the Tribe and TPL does not arise under federal law.

On the other hand, TPL, appellee, contends that this case does not involve a commercial contract dispute, but rather involves a tribe's improper use of its sovereign immunity. Additionally, TPL contends that the district court had jurisdiction over the Tribe's licensing process because the exhaustion doctrine's exceptions apply whenever an injustice would result. Thus, TPL contends that the district court properly exercised its jurisdiction to prevent the Tribe from frustrating the district court's jurisdiction.

### IV. STANDARD OF REVIEW

"The subject matter jurisdiction of the district court is a question of law, and therefore, subject to *de novo* review." *United States v. Perez*, 956 F.2d 1098, 1101 (11th Cir.1992).

### V. DISCUSSION

"Under our long standing interpretation of the current statutory scheme, the question whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650

---

**8.** Mandel and Sisto were officers, directors, and principal sharcholders of TDC.

**9.** For purposes of this opinion, the Tribe and Welt are the appellants, and TPL is the appellee.

(1986) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2845–46, 77 L.Ed.2d 420 (1983)). "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint' rule." *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 840, 109 S.Ct. 1519, 1520, 103 L.Ed.2d 924 (1989). The application of the well-pleaded complaint rule can defeat federal question jurisdiction. *Graham*, 489 U.S. at 841, 109 S.Ct. at 1521. According to the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (citing *Gully v. First National Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936)). "The jurisdictional question in this case is not affected by the fact that tribal immunity is governed by federal law." *Graham*, 489 U.S. at 841, 109 S.Ct. at 1521.

In this case, neither the verified complaint nor the supplemental complaint states a federal question.[10] Specifically, the verified complaint states that "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1331," and then presents facts establishing a breach of contract claim. The supplemental complaint adopts the allegations of the verified complaint, including the jurisdictional basis, and then presents facts establishing that the Tribe is exercising self-help in violation of the management and economic development agreement (breach of contract).

The February 27, 1992, motion for preliminary injunction, the July 21, 1992, emergency motion for order enjoining Tribe from exercising self-help to terminate the management contract, and the August 21, 1992, emergency motion of Tamiami Partners for a preliminary injunction also fail to assert a federal question. The motions merely allege that the Tribe must arbitrate as the parties agreed.

On September 16, 1992, TPL filed a memorandum in support of its motion for prelimi-

nary injunction and a supplemental memorandum in support of its motion for injunctive relief. In these memoranda, TPL suggests for the first time that federal question jurisdiction exists because TPL is challenging the tribal court's assertion of jurisdiction over the dispute between TPL and the Tribe.

After oral argument, on June 4, 1993, TPL submitted a motion for leave to supplement oral argument. In this motion, TPL concedes that the original complaint "did not raise the federal question before the district court." Additionally, TPL suggests that not only did the original complaint not state a federal question, but also the proposed supplemental complaint failed to raise a federal question. Thus, TPL asks that this court "deem the pleadings amended to remedy this procedural problem." We decline to do so.

■ TPL's mere assertion that the district court had federal question jurisdiction pursuant to 28 U.S.C. § 1331, without alleging facts necessary to support a federal question, fails to give the district court subject matter jurisdiction. According to *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), to invoke a federal court's jurisdiction under section 1331, TPL must have asserted a claim " 'arising under' federal law." *National Farmers Union*, 471 U.S. at 850, 105 S.Ct. at 2450. The right to be protected against an unlawful exercise of tribal court judicial power is such a claim arising under federal law "because federal law defines the outer boundaries of an Indian tribe's power over non-Indians." *National Farmers Union*, 471 U.S. at 851, 105 S.Ct. at 2451. As indicated earlier, however, TPL never pleaded such facts. *See Caterpillar*, 482 U.S. at 393 n. 7, 107 S.Ct. at 2430 n. 7 (finding that "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced"). Thus, TPL presented no federal question, and the district court did not have subject matter jurisdiction. *See Stock West, Inc.*, 873 F.2d at 1225 (finding "federal question jurisdiction does not exist merely because an Indian tribe is a party or the case involves a contract

---

10. We are aware that the district court denied TPL's motion for leave to file a supplemental complaint. We review the supplemental com-

plaint, however, to determine if its filing would have cured the jurisdictional defect.

with an Indian tribe"); *Martinez v. Southern Ute Tribe*, 249 F.2d 915, 917 (10th Cir.1957) (finding that federal question jurisdiction does not exist simply because an Indian is a party or because the lawsuit involves Indian property or contracts), *cert. denied*, 356 U.S. 960, 78 S.Ct. 998, 2 L.Ed.2d 1067 (1958); *Jackson v. United States*, 485 F.Supp. 1243, 1247 (D. Alaska 1980) (determining that merely because the Secretary of the Interior approved a contract entered into with an Indian tribe, pursuant to 25 U.S.C. § 81, did not render a lawsuit arising from the contract one that presented a federal question).

■ Moreover, in this case, the Tribe's waiver of sovereign immunity is of no import. "[T]he existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which the sovereignty has been altered, divested, or diminished...." *National Farmers Union*, 471 U.S. at 855–56, 105 S.Ct. at 2453. Even though the parties' agreement contains a limited waiver of the Tribe's sovereign immunity, this waiver cannot grant federal court jurisdiction where it otherwise would not exist—that is, this state law breach of contract claim is not appropriate for federal court jurisdiction.[11] *See Graham*, 489 U.S. at 841, 109 S.Ct. at 1521 (finding that state-law tax claims do not arise under federal law, and thus there is no independent basis for original federal jurisdiction, even though tribal immunity, a federal defense, is governed under federal law); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 18 n. 17, 71 S.Ct. 534, 542 n. 17, 95 L.Ed. 702 (1951) (finding that consent of the parties cannot expand the jurisdiction of federal courts because it would allow federal courts to become "the common resort of persons who have no right, either under the Constitution or the laws of the

United States, to litigate in those courts"); *Weeks Construction, Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668, 671 (8th Cir.1986) (finding "[m]ere consent to be sued, even consent to be sued in a particular court, does not alone confer jurisdiction upon that court to hear a case if that court would not otherwise have jurisdiction over the suit"). Under 28 U.S.C. § 1331, the district court only had subject matter jurisdiction to hear challenges to the tribal court's jurisdiction after a full opportunity for tribal court determination of jurisdictional questions.[12] *National Farmers Union*, 471 U.S. at 856–57, 105 S.Ct. at 2454.

Now that we have reviewed the record in this case, we are aware that when the court entered the third order on August 21, 1992, events had occurred and evidence was in the record that suggested a basis for district court jurisdiction. The district court did not have jurisdiction, however, because although the evidence was present, neither the complaint nor the supplemental complaint had sufficient allegations to meet the standard for district court jurisdiction. Because we are now aware of facts which suggest that the district court could have jurisdiction if the case arose today, we remand the case to the district court with directions that the district court dismiss this action unless one of the present parties files a complaint or other pleading which properly alleges jurisdiction. If such a complaint or petition is filed within thirty days of the date of remand, the district court shall proceed to frame and determine the issues in the usual manner.

## VI. CONCLUSION

We hold that the district court did not have subject matter jurisdiction over this action. Accordingly, we reverse the district

---

11. In fact, "[a]bsent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe." *Puyallup Tribe v. Dept. of Game*, 433 U.S. 165, 172, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977). The Supreme Court has continuously acknowledged tribal courts' inherent power to exercise civil jurisdiction over non-Indians in conflicts affecting the interests of Indians on Indian lands. *See, e.g., Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).

12. The tribal court's determination is ultimately subject to review in the district court, but unless the federal court determines that the tribal court lacked jurisdiction, the federal court must defer to the tribal court and cannot allow relitigation of issues resolved in the tribal court. *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 19, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987).

court and remand for appropriate action consistent with this opinion.

REVERSED AND REMANDED.

