**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-11267

————————————————

ERICA LAVINA,
ANDREA DARLOW,

   individually and on behalf of all those similarly situated,

                             *Plaintiffs-Appellants,*

*versus*

FLORIDA PREPAID COLLEGE BOARD,

   a Florida agency,

JOHN ROOD,

   in his capacity as Chairman of the Florida Prepaid College Board,

ADRIA D. STARKEY,

   in her capacity as Vice Chair of the Florida Prepaid College Board,

MARK AGUSTIN,

SLATER BAYLISS,

   in their capacity as members of the Florida Prepaid College Board, et al.,

                             *Defendants-Appellees.*

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:24-cv-60001-BB

———————————————

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether the Florida Prepaid College Board enjoys sovereign immunity from a suit to enjoin changes to its college savings plans. After Andrea Darlow and Erica Lavina purchased college tuition savings plans for their daughters, they sued members of the Board to enjoin the application of amendments to their plan contracts as violative of the Contracts and Takings Clauses. *See* U.S. CONST. art. I, § 10, cl. 1; *id.* amend. V. The district court dismissed the suit as barred by the Eleventh Amendment. Because the requested relief would require specific performance of a contract, we agree that sovereign immunity bars the suit. But because the district court dismissed the complaint with prejudice, we vacate and remand with instructions to dismiss without prejudice.

## I. BACKGROUND

The Florida Prepaid College Board offers savings plans for Florida residents to prepay for a child's college tuition. In exchange for a fixed amount, the plan "guarantees to cover the cost" of tuition at "any Florida public university or community college" when a beneficiary is ready to enroll. And if the beneficiary decides to

attend a private or out-of-state college, the plan promises to transfer "an amount not to exceed the current rates at state universities and community colleges in Florida" to the college. Andrea Darlow and Erica Lavina purchased plans for their daughters in 2004 and 2006, respectively.

In 2007, the Florida Legislature allowed state colleges to charge a "tuition differential" fee to "improv[e] the quality of direct undergraduate instruction." An Act Relating to Academic Fees, 2007 Fla. Laws ch. 2007-225 (codified as amended at FLA. STAT. §§ 1009.01, 1009.24, 1009.98). The statute defined the "tuition differential" fee separately from "tuition," FLA STAT. § 1009.01(1), (3), and it exempted holders of tuition plans "in effect on July 1, 2007," from paying the fee, *id.* § 1009.24(16)(b)(5). The Board then amended the plan contract to specify that the new fee was not covered.

More than a decade later, Darlow's and Lavina's daughters decided to attend out-of-state colleges. The Board told them it would transfer to their colleges the amount it would have paid for them to attend a Florida state college. Because Darlow's and Lavina's daughters were exempt from paying the tuition differential fee if they attended a Florida state college, the Board declined to transfer an amount equivalent to that fee to their out-of-state colleges.

On January 2, 2024, Darlow and Lavina brought a putative class action against members of the Board and alleged that the

Board's refusal to transfer an amount equivalent to the tuition differential fee to their non-Florida state colleges violated the Contracts and Takings Clauses. *See* U.S. CONST. art. I, § 10, cl. 1; *id.* amend. V. They sought declaratory relief and an order "[e]njoin[ing] [the Board] from applying the [tuition differential fee] exemption and . . . definition" from the 2007 statute and from "applying [the Board's] changes to the Plan Contracts of . . . Plan Beneficiaries [who] attend Non-Florida State Schools." The Board members moved to dismiss the complaint on the ground that they enjoyed sovereign immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 671 (1999) (stating that the Board "is an arm of the State of Florida").

A magistrate judge recommended that the district court deny the motion to dismiss. He concluded that the suit could proceed under *Ex parte Young* because it requested relief that was "prospective in nature and d[id] not seek money damages."

The district court disagreed with the magistrate judge's recommendation and dismissed the complaint with prejudice. It ruled that the "essence" of the requested relief was to require the Board "to pay the value of the [tuition differential fee]," which amounted to "a refund to be paid by the State" that is "precluded by the Eleventh Amendment."

The district court did not consider whether the requested relief was foreclosed under *Ex parte Young* because it amounted to a request for specific performance of a contract. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*, 177 F.3d 1212, 1226

(11th Cir. 1999). We asked the parties to address that issue at oral argument.

## II. STANDARD OF REVIEW

"We review *de novo* the dismissal of a complaint for lack of subject-matter jurisdiction due to sovereign immunity." *Koletas v. United States*, 159 F.4th 813, 817 (11th Cir. 2025) (italics added).

## III. DISCUSSION

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Supreme Court has explained that we understand "the Eleventh Amendment to stand not so much for what it says, but for the presupposition which it confirms." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (alteration adopted) (citation and internal quotation marks omitted). "That presupposition" is twofold: "first, that each State is a sovereign entity in our federal system; and second, that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Id.* (alteration adopted) (internal quotation marks omitted) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)).

Although the Eleventh Amendment respects state sovereign immunity, we may exercise jurisdiction over suits, under *Ex parte Young*, against state officials "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce

. . . an unconstitutional act." 209 U.S. 123, 156 (1908). That is, the Constitution permits suits "to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States,'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (quoting *Ex parte Young*, 209 U.S. at 160), based on the principle that an official is "stripped of his official or representative character" when his actions "conflict with the superior authority" of federal law, *Ex parte Young*, 209 U.S. at 159–60.

Most often, our inquiry into whether a suit may lie under *Ex parte Young* focuses on whether it seeks prospective relief or retrospective damages: a suit is permissible if it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted), but not if it is "in essence one for the recovery of money from the state," *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1243 (11th Cir. 2014) (citation and internal quotation marks omitted). The district court and the parties applied this framework.

Nevertheless, the Supreme Court has explained that *Ex parte Young* does not permit "actions against state officers for specific performance of a contract to which the State was a party." *Edelman v. Jordan*, 415 U.S. 651, 666–67 (1974); *see also Hagood v. Southern*, 117 U.S. 52, 67 (1886) (holding that sovereign immunity barred a suit under the Contracts Clause against state officials where the state was "the actual party to the alleged contract the performance of which is decreed"); *In re Ayers*, 123 U.S. 443, 504 (1887) (similar).

25-11267                Opinion of the Court                7

Consistent with these precedents, we have likewise held that *"Ex parte Young* does not permit individual officers of a sovereign to be sued when the relief requested would, in effect, require the sovereign's specific performance of a contract." *Tamiami Partners*, 177 F.3d at 1226.

We conclude that the plan purchasers' suit may not proceed under *Ex parte Young* because it seeks relief that amounts to "specific performance of a contract to which the State was a party." *Edelman*, 415 U.S. at 667. The plan purchasers allege that the Board members' unlawful conduct of "wrongfully apply[ing] and interpret[ing] the Plan contract" "deprive[s] [them] of contracted rights and benefits." An order requiring members of the Board to cease this allegedly unlawful conduct would necessarily require the state, as "the actual party to the alleged contract," *Hagood*, 117 U.S. at 67, to perform its obligations under the contract. *Ex parte Young* does not permit that relief.

To be sure, the purchasers did not describe their request as specific performance. But a party may not "wiggle into [*Ex parte Young*] through creative pleading." *Seminole Tribe*, 750 F.3d at 1243; *Tamiami Partners*, 177 F.3d at 1225–26 (rejecting a "thinly-disguised attempt . . . to obtain specific performance" under *Ex parte Young*). We must determine the "effect" of the requested relief. *Tamiami Partners*, 177 F.3d at 1226. As the plan purchasers explain in their brief, they "seek the benefit of their bargain" by requiring "state officials [to] interpret and enforce their future contractual benefits"

lawfully. And that request can only be understood as a request for specific performance.

Darlow and Lavina cite our decision in *Maron v. Chief Financial Officer of Florida*, 136 F.4th 1322 (11th Cir. 2025), but *Maron* is distinguishable. That decision concerned a Florida statute that authorized the State to keep earnings accrued on unclaimed private property. *Id.* at 1326. The Marons alleged that the State violated the Takings Clause by not compensating them for the earnings. They sought an order requiring the State to pay just compensation when they filed future claims. *Id.* at 1333–34. We held that their suit was not barred by sovereign immunity because it sought only prospective relief to cure an ongoing injury caused by the failure to pay just compensation. *Id.* But the Marons' alleged property interest was not based on a contract between an individual and the State. There was no contract to enforce against Florida. By contrast, the purchasers' alleged property right arises solely from the plan contracts.

Darlow and Lavina also rely on *Lipscomb v. Columbus Municipal Separate School District*, which held that "requested relief . . . indistinguishable from a suit to enjoin [state officials] from declining to abide [by] challenged lease terms" could proceed under *Ex parte Young*. 269 F.3d 494, 500–01 (5th Cir. 2001). Although *Lipscomb* allowed a suit for specific performance of a state contract, the Fifth Circuit failed to discuss Supreme Court precedents holding to the contrary. *See, e.g.*, *Edelman*, 415 U.S. at 666–67; *Hagood*, 117 U.S. at 67; *In re Ayers*, 123 U.S. at 504. *Lipscomb* cannot be squared with

those precedents, and it conflicts with our decision in *Tamiami Partners*, which we are bound to follow.

Although the district court correctly ruled that it lacked jurisdiction, it erred by dismissing the complaint with prejudice. We have explained that a "dismissal for lack of subject matter jurisdiction is not a judgment on the merits and [should be] entered without prejudice." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008); FED. R. CIV. P. 41(b). When a district court lacks jurisdiction but dismisses with prejudice, "we remand . . . so that the district court can reenter its dismissal order without prejudice." *Stalley*, 524 F.3d at 1235.

### IV. CONCLUSION

We **VACATE** and **REMAND** for the district court to dismiss without prejudice.